You may proceed, Counsel. Thank you, Your Honor. Your Honors, this case essentially has three primary issues. Number one is the issue of the denial of Petitioner Gabby Novazquez's SAW application. Number two concerns the issue of the denial of a motion to continue. And the third issue on appeal is the Board's restructuring or redoing of a legal standard in the relief of cancellation removal to add the requirement that a Petitioner must prove that medical help is not available in Mexico. Now, turning to the first issue, Petitioner Gabby Novazquez met all the requirements for a grant of SAW, which is Special Agricultural Worker. Except for one problem, and that is that the application was nine months too late, was it not? No. The application was submitted on time. There was a medical examination submitted. However, at the interview in 1989, it was he was told that there was an HIV test that was missing from that medical exam. Now, he was not given any instructions as to where to actually send the medical exam, what to do with the medical exam. He did actually have another medical exam taken with the HIV results. However, he was untimely in submitting it to the service because he did not know where to submit it. Well, he had 30 days within which to submit it, and it took him nine months. Isn't that part of the problem that you have to deal with? No. It comes down to, well, he has to know where to submit it, whether he has 30 days or three years to submit it. If he doesn't know where to submit it, how can he submit it? So what did the INS tell him when they said you're missing this? All he was told was that he needs to get a new medical exam, nothing else. And to add a little bit of context, you know, we're dealing with the SAW program. These are field workers. These are people who have, you know, little or no formal education. In the case of this man, he has no education. Congress intended for these programs to be provided with generous eye. Now, and the case is not complicated. In the real world, we all, as attorneys, we have clients. Many times my clients will move. Many times my clients, their phone numbers are disconnected. It then becomes incumbent on the attorney to actually look through the file and look through alternative ways of contacting people. Counsel, can you just explain to me procedurally, because it does seem a bit bizarre that the, I guess the INS reopened the proceeding after six years. As I understand it, the procedural posture of the case was that it was sent, it was remanded by the BIA to the regional center because the BIA had noticed that the medical exam was actually in there. So then what happened? Did it sit there for six years? Yes. The case was remanded on June 9th, 1999, which is at the supplemental record page five, because the LAU, the Legalization Appeals Unit, noticed that there was a medical exam in the file. And it sat there for until ‑‑ But isn't there some, I mean, under the rules, isn't there some procedural limit? I mean, at some point, there can be no more sua sponde reopening after the last filings. I think the rule is 45 days after the last filing, the INS can't reopen it. But they did. I know. But what's your argument to that? I mean ‑‑ Well, once the argument, once it's sua sponde reopened and remanded, it's an open case. That's the whole ‑‑ I'm not familiar with any case law that says that they don't have a right to reopen any later date past 45 days. Well, there is a regulation on that. Okay. But not ‑‑ I don't know if that applies to sua sponde reopening. Does the regulation, any of the regulations permit the filing of a late appeal? They ‑‑ Specifically, 8 CFR 103.3, does that permit the filing of a late appeal? Yes. Late is permitted in ‑‑ believe me, the site is at ‑‑ the site would be at INA 212A6. And it specifically is ‑‑ So this is the statute? Yes. And it specifically, the way it works, it refers to grounds of, you know, if someone is excludable. And if someone is excludable at the time of the interview and then later, you know, rectifies that situation, then they are, their application is approvable, which is exactly the situation that should have occurred in this case. But the regulation I refer to deals with this AAO, the administrative office? Yes. Does its regulations permit a late filed appeal for any reason? The AAU is bound by the INA. I don't have any separate AAU regulations. Okay. Where, you know, they have their own set of law. No. They are bound by the INA. So, and under the INA 212A6, if there is a ground of excludability, which is later fixed or remedied, they are allowed to then approve the application. Okay. Do you want to go on to your next point, Counsel? Sure. The second argument regarding the motion to continue, the administrative record is missing, a key point part of this case. Apparently, the immigration judge must have turned off the tape recorder. What was the purpose of asking for the continuance? Because Dr. Birch did not make himself available, despite having the fact that the client had paid him and, you know, he had been paid for his testimony. He was set up for a certain time. Just for some reason, he was not available at that time. His testimony would have gone to extraordinary circumstances. Yes. Yes. But didn't the proceeding find that your client could not meet the continuous residence requirement? One of the clients, not both. Just one of them. Yes. Yes. So as to her, that would have to be harmless error, wouldn't it? As to her. Yes. But these are joint removal proceedings. So he had a right to that testimony. His testimony would have related to the husband as well? Yes. Yes. And unfortunately, there's not much for me to say on that, because the tape is – was turned off. Because I, you know, I poured over that – the admin record many times, and it's just not there. And unfortunately, in removal proceedings, there's just not many times a tape. People interrupt. You know, other cases are scheduled at the same time. Tapes get turned off. Okay. Do you want to say anything about the reviewability of the denial of the hardship determination? Yes, I do. This is an interesting question that perhaps those of us who do cancellation removal cases, and I've been doing them for 11 years, perhaps 100 of them per year, don't know the exact answer to. What is the exact legal standard for exceptional unusual hardship? And does a – I know it when I see it. I've heard that explained. Yeah. Well, so have I. The question comes down to, does the respondent or petitioner have to prove that medical care is not available in Mexico? And the answer is no, because if that was the case, then you would conceivably never be able to win a cancellation or removal case. The question is – the standard is not whether it's available in Mexico. It's whether it's available in Mexico to those particular aliens. And I don't see how the BIA can make a blanket determination that, without even hearing the doctor's testimony, that this type of medical care that the doctor was purportedly to testify to is not available in Mexico. And regardless, they don't need to prove that. Counsel, you're down to less than a minute. Do you wish to reserve? Yes, I will reserve. Thank you. If you may do so. We'll hear from the government. Good afternoon. Good afternoon. May it please the Court, Andrew Nsinga for the respondent, the Attorney General. Before the Court today are two agency decisions. First, the denial of an untimely appeal by the Administrative Appeals Unit of the Citizenship and Immigration Services. And second, the denial by the Board of Immigration Appeals, an appeal from an immigration judge's decision not to sua sponte continue proceedings. With regards to the AAU's denial of the untimely appeal, the appeal was untimely. The service sent out notice of the decision in June of 1992. And what happened with the notice? It was sent to the last known address of Petitioner. And it was sent to an address and it came back as undeliverable. Correct, Your Honor. What's the obligation of the service when that happens for future notices? Well, the intent to deny, of course, was sent out to the Papago Court address. And then 30 days later, or I believe it was two months later, the notice of decision was sent to the same address as well. It was sent to the last known address of Petitioner. The regulation does not require anything specifically. The regulations provide that the service give written notice. In another context, the regulations in another SAW context, the regulations require that notice be sent to the last known address. That is where the service sent notice. So they could, if the service is sending a series of notices, they can send the first one out, it comes back undeliverable, they just, it's okay for them to continue to send notices to an address that they know doesn't work. That's okay? Well, they are not the post office. They don't know specifically why their certified service was returned. How does that practice square with Jones v. Flowers? I'm not aware of that case, Your Honor. The 2006 Supreme Court case that says due process violated when an agency does that? Well, first of all, Respondent has not alleged a due process violation with regards to service here. And in this case, it would be, service would be reasonably calculated to reach Petitioner. Petitioner submitted a written notice. How can it be reasonably calculated when you send it to an address and it comes back undeliverable, and yet you send the next notice to the same undeliverable address? Because the service has fulfilled its obligation by attempting to contact Petitioner at the last address they were provided. They were provided with one address with the initial I-700, McBride Street. Didn't Vasquez Avila provide the service with his Fullerton P.O. box? With the affidavit. Did he start with a yes or no? Yes, Your Honor. And that was in their file? Yes. And that was his correct address? I do not know what his correct address was. Hasn't he said that that's his correct address? Counsel in briefs to this Court and counsel in briefs to the AAU made that claim. However, there's no ---- Do you think counsel's misrepresenting that? I do not know what ---- Do you have any evidence to suggest that he's misrepresenting it? No, Your Honor. So may we presume that's his correct address? I don't know, because there is no record evidence to necessarily make that determination. The affidavit doesn't count as a record? The ---- The affidavit concerning his eligibility for SAW status? The brief one with his AAU. It claims that this was his post office box, yes. But we do not know what his address was. I think it's also notable that in his 2000 application for cancellation removal before the immigration judge, it never lists the post office box as an address. In fact, during the relevant time period, it lists the Papago Court address, which was a service attempted to provide service of their decisions. Later in 1992, he moved to Anna or Rosa Anna Street, something about Anna. Do we know anything from the record as to how the Petitioner actually finally got notice, because nine months later, a response came in? Yes, Your Honor. About nine months after the appeal should have been filed, he apparently went to the immigration office to reapply for employment authorization, which is what he had at that point. He did not have temporary status. And he was told that he could not get more employment authorization because his application had been denied. At that point ---- Isn't that all nullified, though, by the LAU's action in 1999? I mean, in 1999, you're saying, oh, he was ---- his appeal was late because he didn't file it in 1992, and he should have filed it in 1992. But in June of 1999, the LAU orders his application to be remanded for further consideration and action. And the remand, I presume, goes to the regional processing center, right? Right. Well, what happened there? Well, they recognized that they were in error and that the appeal was untimely. So then in 2006, they ---- Right. So 1999, it's remanded because it had been denied in error because it was denied because there was no medical form when, in fact, there was a medical form. Well, with all due respect, actually, there does not appear that the medical form was ever given to the service until 1993. The ---- There are two medical exams in the record. One is from 1990 and 90 ---- excuse me, 1988. Then the second one is from 1993, and in their brief to the AAU, they point out that this was just gotten a few days ago, the one in 1993. It does not appear in the record until ---- neither appear in the record until Petitioner sends them with their untimely appeal. It was actually denied because there was no medical exam provided to the service. Well, we don't really know that for sure. Well, the notice of ---- I mean, the absence of the record from the Laguna Niguel Record Center where we have convictions for the very people who were destroying all those records is hardly compelling. Well, the intent deny and notice of decision say there was no medical examination provided. It does not say it was incomplete, says there was no examination provided. Well, the other thing I don't understand is, so in 1999, I mean, do you ---- it's remanded to the regional center, but it's ---- but it's sua sponte reopened by another agency or by the AAO? By the AAU, yes. AAU. So how could they do that? If it's supposed to be being considered by the regional center, how can the AAU sua sponte reopen? Well, under the regulations, the appeal should never have even been processed under ACFR 103.3A34. The late appeal is not even supposed to be processed by the AAU. It should have been just denied. And in 2006, they recognized their error and corrected that error. So it took 14 years for the INS to sort of dilly-dally around with this application for this man's citizenship? Well, it's for temporary status. Temporary status. It's unfortunate that it took the service this long. However, during none of this period is there any record evidence that Petitioner made any attempt to contact the service. So if the Petitioner's nine months late, school's out, service is 14 years late, that's okay? Well, unfortunately, there is no right under the regulation for Petitioner's application to be more speedily processed. And nonetheless What if it had been 25 years? Still doesn't matter? I'm not aware of any right that he would have. 50 years? And he could not show prejudice, Your Honor, because he was allowed to remain in the dependency of his application. So absolutely no obligation whatsoever on the part of the government to move with any kind of speed? I unfortunately know, Your Honor. All right. Are you familiar with 8 CFR Section 2102G? Not specifically, Your Honor. Okay. Because you're going to have to explain how this applies to me here. What it says is that the Administrative Appeals Unit, AAU, may sua sponde reopen any proceeding conducted by that unit under this part and reconsider any decision rendered in such proceeding. And the very next sentence says, The decision must be served on the appealing party within 45 days of receipt of any briefs and or new evidence or upon expiration of the time allowed for the submission of any briefs. The way I read it is that the decision to sua sponde reopen has to be done within 45 days of the last brief filed or the time for filing the last brief. Here, the AAU waited 6 years. So isn't the AAU untimely? Well, I believe the problem is the AAU never had really ñ it was never properly within its jurisdiction to even grant the appeal because it was untimely. It should have been automatically denied. It was undoubtedly an error by the AAU, and they were simply correcting their error. If I may briefly touch on that. Counsel, your time has expired. Thank you. We will hear from Mr. Mikada. You have less than a minute. Just real briefly, at supplemental record AR page 34, there is an affidavit where he states I've had this PO box just for my use as a field worker. AR-99, supplemental AR-99, he was granted temporary resident status. And the way the SAW worked, you get temporary resident and then you eventually become a permanent resident. What was the date of that grant? Or what year? It was 1998. It's at page 1988. 1988? Yes. 7-13-88. Yes. It's at page 99. Okay. And briefly, the SAW application is only six pages. They can't look through a six-page application and find two different addresses? It's amazing. All right. Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument next in Lopez-Bahena v. Gonzalez.
judges: O'scannlain,hawkins,wardlaw